UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDREW RAMON SCOTT,

    Plaintiff,

v.

THOMAS WINN,

    Defendant.

Case No. 15-13828
Honorable Laurie J. Michelson
Magistrate Judge Mona K. Majzoub

**OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS [1]**

Over Mother's Day weekend 2004, Clarissa Vaughn hosted a small party at her home. The party went smoothly until Tahari Briggs got into a verbal argument with Vaughn's sister and a few other women. Vaughn kicked Briggs out. Tempers then briefly cooled. But the next day, Briggs paid two women to attack Vaughn. Andrew Scott, Vaughn's friend, witnessed the assault and helped break it up. The next morning, after an altercation, Scott killed Briggs.

Though Scott claimed self-defense at trial, a jury convicted him of first-degree murder. He received a mandatory life sentence. The Michigan Court of Appeals found no reason to upset the conviction and the Michigan Supreme Court denied leave to appeal. Scott now petitions this Court for a writ of habeas corpus. Scott raises three claims that cannot overcome AEDPA. So the Court will deny Scott's petition.

# I.

Tahari Briggs argued with Clarissa Vaughn's sister at a party Vaughn hosted.[1] (R. 6, PID 237.) Vaughn told Briggs to leave. (*Id.*) Not long after, Briggs paid two women to beat Vaughn up. (R. 6, PID 172.) Andrew Scott saw the women emerge from Briggs' van and start assaulting Vaughn. (R. 6, PID 315–16.) Scott broke up the attack and immediately contacted Louie Howard, Vaughn's boyfriend at the time. (R. 6, PID 316.)

Howard arrived and, along with Scott, exchanged threats with one of Briggs's friends. (R. 6, PID 316.) (*Id.*) But nothing came of the verbal exchange and Scott and Howard departed. (*Id.*)

The next day, Scott and Howard were driving in Scott's van when they saw Briggs' van coming toward them. (R. 6, PID 247.) Scott pulled alongside Briggs' van. And Scott says Briggs crouched forward, appearing to reach for a gun, so Scott, armed with a .38 caliber handgun, shot Briggs twice. (R. 6, PID 257, 320.) Briggs died the same day.

Grand Rapids Police initially suspected that Scott and Howard shot Briggs. (R. 6, PID 171, 270.) But both men denied any involvement in the shooting. (R. 6, PID 257, 321.) And because investigators could not accumulate enough evidence to contradict their claims of innocence, the case went cold. (R. 6, PID 170.)

Seven years later, detectives unearthed new DNA evidence implicating Scott and issued an investigative subpoena for Howard. (R. 6, PID 270, 274.) Although Howard stood by his earlier statement, it contradicted the new evidence and so the Grand Rapids police charged him with perjury. (R. 6, PID 257.) After the police arrested Howard on the perjury charge, he implicated

---

[1] The factual narrative draws solely from the trial-court record available to the Michigan Court of Appeals. 28 U.S.C. § 2254(d)(1); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (limiting review under § 2254(d)(1) to the record available to the state court that adjudicated the claim on the merits). These facts carry a rebuttable presumption of correctness. 28 U.S.C. § 2254(e)(1).

2

Scott in Briggs' murder. (R. 6, PID 274.) Howard's new statement, combined with the DNA evidence, led to first-degree murder charges against Scott. (R. 6, PID 275.)

Scott opted for trial over a plea bargain. (R. 6, PID 365.) At trial, Scott testified he shot Briggs in self-defense. (R. 6, PID 320.) But the jury convicted him of first-degree murder. (R. 6, PID 361.) Scott received a mandatory life sentence without eligibility for parole. (R. 6, PID 365.) He appealed to the Michigan Court of Appeals which affirmed his conviction over a partial dissent. *See People v. Scott*, No. 311955, 2014 Mich. App. LEXIS 780, at *1–7 (Mich. App. Apr. 24, 2014). The Michigan Supreme Court denied leave to appeal. *People v. Scott*, 854 N.W.2d 882 (Mich. 2014).

Scott now seeks a writ of habeas corpus from this Court. (R. 1.) Scott raises three challenges to the constitutionality of his incarceration: prosecutorial misconduct, ineffective assistance of counsel, and cumulative error. (R. 1, PID 3–4.) The state responded and Scott filed a reply. (R. 5, 7.) Though Scott's prosecutorial misconduct claim highlights some troubling conduct, ultimately the petition does not warrant habeas corpus relief. The Court will address all of Scott's arguments, though not in the order he presents them.

## II.

Habeas corpus petitions do not afford federal courts an opportunity to conduct "ordinary error correction" of state criminal convictions. *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011). Rather, the Anti-Terrorism and Effective Death Penalty Act instructs federal courts to give state courts "the benefit of the doubt." *Stewart v. Trierweiler*, 867 F.3d 633, 636 (6th Cir. 2017). According to AEDPA, a federal court must defer to a state court's decision on the merits unless the decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). But "[w]hen a state court does not address a claim on the merits, . . . 'AEDPA deference' does not apply and [this Court] will review the claim de novo." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

### III.

Scott contends that multiple instances of prosecutorial misconduct violated his due process and fair trial rights.[2] Scott points to portions of the prosecutor's opening and closing statements along with a reference to his tattoo during cross-examination. (R. 1, PID 8–14.) The state responds that Scott procedurally defaulted all of these claims when his trial lawyer did not object to them. (R. 5, PID 52.)

Where a habeas corpus petitioner raises a claim that the state believes is procedurally defaulted, federal courts may take the path of least resistance. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003). So to ease the analysis, the Court will address the merits of Scott's prosecutorial misconduct claims.

### A.

Scott's strongest claims of prosecutorial misconduct occurred during the opening and closing statements. During her opening statement, the prosecutor told the jury "[w]e [the prosecution] do not come to you and would not come to you unless the evidence would prove beyond a reasonable doubt, that [Scott] . . . killed Tahari Braggs without any lawful justification." (R. 6, PID 170). Then in closing, the prosecutor attacked the merit of Scott's self-defense argument by stating, "[i]f this detective believed this is self-defense, we would not be sitting here right now.

---

[2] Scott also argues that the cumulative effect of these errors deprived him of due process, but in the Sixth Circuit, the cumulative effect of trial errors is not a cognizable claim for habeas corpus relief. *See Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006).

4

They bring us the warrant request. They asked us to write a warrant. If this was self-defense, this [detective] would have never sought a warrant." (R. 6, PID 355.) Scott raises weaker claims that at various times the prosecutor bolstered the credibility of a fact witness (R. 6, PID 167); vouched for the performance of police investigators (R. 6, PID 168); and lamented that justice was overdue (R. 6, PID 170).

The Michigan Court of Appeals adjudicated these claims on the merits. *See Scott*, 2014 Mich. App. LEXIS 780 at *1–7. Over a partial dissent, the appellate court believed that in each instance, the prosecutor was either responding to an argument advanced by the defense or drawing a permissible inference from admitted evidence. *Id.* Moreover, the trial judge instructed the jury that the lawyers' arguments were not evidence, so the appellate court reasoned the curative instruction obviated any chance that the prosecutor's remarks swayed the jury. *Id.* at *6. As the state appellate court adjudicated Scott's claims of prosecutorial misconduct "on the merits," Scott must clear § 2254(d)'s bar to habeas relief.

To this end, Scott argues the appellate court unreasonably applied *Darden v. Wainright*, 477 U.S. 168 (1986), *Donnelly v. DeChristophoro*, 416 U.S. 637 (1974), and *United States v. Young*, 475 U.S. 1 (1985). *Darden* and *Donnelly* direct courts to place the prosecutor's comments in context and ask "whether [they] 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643). Scott says that is exactly what happened in his case. (R. 7, PID 523.) *Young* holds that a prosecutor may not vouch for the credibility of witnesses lest the jury "trust the government's judgment rather than its own view of the evidence." *Young*, 475 U.S. at 18–19. Scott says the verdict against him is clear evidence the jury trusted the government's judgment instead of independently weighing the witnesses' credibility. (R. 7, PID 526.)

5

Although the prosecutor's comments during opening and closing are troubling, Scott has not shown that the Michigan Court of Appeals decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(2). *Darden*, *Donnelly*, and *Young* are all generally-phrased precedents. As such, they offer wide "leeway" for fairminded jurists to reach different "outcomes in case-by-case determinations." *Davis v. Carpenter*, 798 F.3d 468, 473–74 (6th Cir. 2015). Here, a fairminded jurist could reasonably conclude that the trial judge's curative instruction eased any concern that the prosecutor's comments may have swayed the jury. And though the Court agrees with the dissent that the prosecutor's opening and closing crossed a line, the dissent ultimately agreed that reversal was not warranted. *Scott*, 2014 Mich. App. LEXIS 780 at *10 (Ronayne Krause, J., dissenting) (finding the evidence against Scott "overwhelming," thus diminishing any deleterious effect flowing from the prosecutor's two errors).

Likewise, a fairminded jurist could find that, taken in context, the remainder of the challenged comments were proper. The shooting happened in 2004, but the state did not bring charges until 2011. So when Scott says the prosecutor impermissibly bolstered a fact witness's testimony, (R. 1, PID 11), the prosecutor was pointing out that the witness's past statements to police remained consistent over seven years. (R. 6, PID 167.) Where Scott sees evidence of the prosecutor vouching for police performance, context shows the prosecutor explaining that the police were not ignoring the case, it just took a long time to gather the evidence. (R. 6, PID 167–68.) And finally, the prosecutor lamenting that justice was overdue occurred in the context of asking the jury to decide the case based on the evidence and law. (R. 6, PID 170.)

In sum, Scott cannot show the state court reached a decision that unreasonably applied, or was contrary to, existing Supreme Court precedent. So he cannot obtain habeas corpus relief with respect to his claims regarding the prosecutor's comments at trial.

**B.**

In the alternative, Scott says his counsel was constitutionally ineffective when he failed to object to any of the prosecutor's comments. The Michigan Court of Appeals addressed this claim on the merits. *See Scott*, 2014 Mich. App. LEXIS 780 at *6. So the Court applies a demanding standard: Scott must show the state court unreasonably applied the deficient-performance-plus-prejudice standard articulated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See Harrington*, 562 U.S. at 101. As a result, the already deferential deficient-performance test becomes "doubly so." *Id.*

Here, with respect to the bolstering, vouching, and justice-overdue claims, the state court reasonably concluded that the prosecutor's comments were not improper, so defense counsel had no basis to object. *Scott*, 2014 Mich. App. LEXIS 780 at *6. However, defense counsel certainly could, and perhaps should, have objected to two comments by the prosecutor—her asking the jury to substitute a police officer's assessment of the case for their own, and later imploring the jury to support the prosecutor's charging decision as a matter of civic duty. *See Scott*, 2014 Mich. App. LEXIS 780 at *8.

But this does not mean that the appellate court unreasonably concluded that Scott's counsel did not perform deficiently (in the constitutional sense). A fairminded jurist, looking at the context of the prosecutor's opening and closing, could find the statements proper and thus reach the conclusion that defense counsel had no basis to object. The statement made during the opening was at least tangentially related to the delay in bringing charges. The prosecutor wanted the jury

7

to know that waiting seven years was simply an indication of a long investigation. And as to the statement made in closing, a reasonable jurist could conclude that it was a response to defendant's testimony.

AEDPA's deferential standard controls. For that reason, Scott cannot obtain habeas corpus relief on his ineffective-assistance claim.

## C.

Scott also believes the prosecutor violated his due process and fair trial rights when she showed the jury a picture of his tattoo. The tattoo shows a small boy, surrounded by guns and bullets, above the phrase "Bemis Boy." (*Id.*) On the first day of trial, Scott's counsel moved to exclude the tattoo for any purpose. (R. 6, PID 125.) The judge agreed, noting that he did see not any relevance to the tattoo. (*Id.*)

At trial, the prosecutor's cross-examination of Scott began with the following exchange:

Q: You're Bemis, correct? Back then you were a Bemis Boy?

A: Bemis Boy, I mean, I hung out in the area.

Q: So you weren't part of a neighborhood gang, Bemis Boys?

A: No, we weren't a gang.

Q: Were you a Bemis Boy?

A: No.

Q: Okay.

(R. 6, PID 326.) The prosecutor then requested a sidebar, which occurred off the record. (*Id.*) At the conclusion of the sidebar, the prosecutor picked up where she had left off:

Q: So you're not a Bemis Boy?

A: No, ma'am

Q: Okay.

A: Bemis Boy? What is a Bemis Boy?

(*Id.*) At that point, the prosecutor showed Scott a picture of the tattoo. (*Id.*) Scott described it as "a little guy with a gun and bullets and it says, 'Bemis Boy.'" (R. 6, PID 327.) The prosecutor then said: "Part of being part of this neighborhood gang is—is—was Louie [Howard] in this same group?" (*Id.*) Scott agreed that Howard and other men who testified were all part of the group, while Briggs was not. (*Id.*)

Scott protests that the jury saw the tattoo. (R. 1, PID 9.) Scott says there is a difference between being a "Bemis Boy" and membership in the Bemis gang. He lived in the Bemis neighborhood, but was never a part of the Bemis gang. (*Id.*) Based on that distinction, and the fact that the prosecutor built a theory of the case around a dispute between the Bemis Boys and a rival gang (R. 1, PID 9–10), Scott concludes that mentioning the tattoo violated his due process and fair trial rights. (*Id.*)

Before turning to the merits of Scott's due process claim, the Court must decide whether any state court addressed it. Although Scott's trial lawyer never objected to the prosecutor's use of the tattoo or to the prosecutor's repeated use of the word "gang" during cross, his appellate counsel raised the issue (R. 6, PID 405), and the state responded to it (R. 6, PID 421–23). The Michigan Court of Appeals, however, did not address Scott's due-process claim based on the introduction of his tattoo.

The Supreme Court says that when, as here, a federal claim is fairly presented to the state court, but the state court does not expressly address it in its opinion, federal courts are to presume that the state court adjudicated the claim "on the merits" such that § 2254(d) applies. *See Johnson v. Williams*, 568 U.S. 289, 293 (2013). The presumption holds unless "the evidence leads very

clearly to the conclusion that a federal claim was inadvertently overlooked in state court . . . ." *Johnson*, 568 U.S. at 303. Scott offers nothing to suggest the appellate court inadvertently overlooked the tattoo claim. It was the first claim raised in Scott's appellate brief (R. 6, PID 405), and the state spent two pages responding to it (R. 6, PID 421–23). Moreover, the appellate court noted that Scott raised "several instances of prosecutorial misconduct" and appreciated that plain-error review governed them all. *Scott*, 2014 Mich. App. LEXIS 780 at *1. Applying the plain-error standard, the appellate court eventually concluded that "none of the alleged errors constituted misconduct . . . ." *Id.* at *6. The upshot is that this Court must assume that the Michigan Court of Appeals decided that introducing the tattoo did not amount to a due-process violation and must review that decision under § 2254(d).

The Court is again troubled by the prosecutor's actions. Multiple times she subtly and not-so-subtly connected "Bemis Boys" to gang affiliation and connected gang affiliation to Scott's motive for shooting Briggs. (R. 6, PID 168, 170–71, 203, 265, 269, 283, 287, 292, 326–27.) That created risk that the jury might connect the tattoo to gang affiliation, and convict Scott regardless of the evidence. *See, e.g.*, *United States v. Santiago*, 643 F.3d 1007, 1011 (7th Cir. 2011). On direct review, injecting evidence of gang affiliation to prove intent may be reversible error. *See United States v. Hendrix*, No. 94-1404, 1995 U.S. App. LEXIS 8676, at *5 (6th Cir. Apr. 12, 1995). Scott certainly thinks so. (R. 1, PID 9–10.)

Yet Scott cannot overcome § 2254(d)(1). A fairminded jurist could have reasonably concluded that, placed in context, describing Scott's tattoo to the jury did not produce a fundamentally unfair trial. There was no dispute at trial that Scott shot Briggs. The only issue was whether he did so in self-defense. And Louie Howard testified that, moments before the shooting, Scott saw Briggs' van and "pulled up to confront [Briggs] about [Briggs' role in the assault on

10

Vaughn]." (R. 6, PID 247.) Howard said Scott shot Briggs within seconds of pulling alongside, before Briggs said a word, and while Briggs' window was still raised; Howard never saw Briggs holding a gun, saw no need to fire, and never felt threatened. (R. 6, PID 248.) Immediately after Scott shot Briggs, Howard testified that Scott remarked that "[Briggs] had to go." (R. 6, PID 249.) The jury also heard testimony about Briggs' role in the fight with Vaughn two days prior to the shooting (R. 6, PID 236–38, 241–42), along with testimony that Scott and Howard saw Briggs' van drive by, gave chase, and opened fire (R. 6, PID 282). So given all the testimony, even though the prosecutor's reference to gang affiliation is questionable, a reasonable jurist could conclude that the gang references did not render Scott's trial fundamentally unfair.

Therefore, he is not entitled to habeas corpus relief on his tattoo claim.

**D.**

In the alternative, Scott says his lawyer performed ineffectively in failing to object to the use of the tattoo. (R. 1, PID 14.)

To succeed on this theory, Scott must again clear § 2254(d). Just like the tattoo claim itself, Scott raised the ineffective-assistance claim on direct review (R. 6, PID 410–11), the state responded (R. 6, PID 428–29), but the Michigan Court of Appeals did not explicitly address it, *see Scott*, 2014 Mich. App. LEXIS 780 at *6. So this Court must again presume the state court decided Scott's claim on the merits. *See Johnson*, 568 U.S. at 293. And just like the tattoo claim, the available evidence offers nothing to rebut that presumption. *See Johnson*, 568 U.S. at 303.

Regardless, Scott cannot show prejudice. As explained above, the state had strong evidence against Scott, so describing the tattoo did not change things very much. Therefore, Scott cannot show a reasonable probability of a different outcome. In the end, Scott cannot clear § 2254(d) on this ineffective-assistance claim.

**E.**

Finally, Scott urges that the cumulated errors detailed above warrant habeas corpus relief. But "cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue." *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006).

For the foregoing reasons, the Court DENIES Scott's petition for a writ of habeas corpus. The Court also DENIES a certificate of appealability as reasonable jurists would not debate the correctness of the Court's rulings on Scott's habeas claims. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court also DENIES AS MOOT Scott' motion for discovery. (R. 8.)

Dated: December 27, 2017

s/Laurie J. Michelson
LAURIE J. MICHELSON
U.S. DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 27, 2017.

s/Keisha Jackson
Case Manager